# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CR-22-16-G ) |
| ZQUAREUS TROYEZ IMMANUEL THOMAS, | ) ) ) ) |
| Defendant. | ) |

## ORDER

By Order dated June 7, 2022, the Court granted Defendant Zquareus Thomas' motion to suppress evidence obtained when he was searched by law enforcement officers, finding that "the totality of the circumstances . . . does not allow a reasonable suspicion that a group of men, including Defendant, had threatened or were intending to do harm to [Tommy] Ingram on December 14, 2021, such as would justify the investigatory detention of Defendant on that date." Order (Doc. No. 48) at 11. The Government subsequently moved to reconsider. *See* United States' Motion to Reconsider (Doc. No. 64). Defendant has responded. *See* Defendant's Response to United States' Motion to Reconsider (Doc. No. 68). Having considered the arguments and authorities presented by the parties, the Court rules as follows.

The Tenth Circuit has summarized the standards to be applied by a district court in evaluating a motion to reconsider a pretrial ruling in a criminal case:

> Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. A district court should have the opportunity to correct alleged errors in its

dispositions. A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. Specific grounds include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier.

*United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citations and quotation marks omitted).

The Government first argues that the Court improperly "cabined the allowable basis for" an investigatory detention of Defendant to reasonable suspicion that Defendant may have been one of a group of armed men threatening to harm Mr. Ingram and failed to consider the officer's reasonable suspicion that Defendant had engaged in or might engage in unspecified other criminal activity. *See* Mot. at 4-8. This argument is unavailing as the Court in its Order expressly considered all the criminal activity that had been suggested by the detaining officer and the Government as the basis for the investigatory detention of Defendant.

In the United States' Response in Opposition to Defendant's Motion to Suppress, the Government argued that the detaining officer had acted on a reasonable suspicion that Defendant was one of a group of "armed assailants," i.e., men who were "menacing [Mr. Ingram] with firearms." *See* Resp. (Doc. No. 28) at 3-5. At the hearing, the detaining officer likewise testified that he initiated the investigatory detention on the basis that Defendant had been identified as one of a group of armed men who had threatened to harm Mr. Ingram. *See* Order at 7. The detaining officer expanded that view upon questioning by counsel for the Government, testifying that he agreed that "the act of either brandishing

or pointing a firearm at someone could make out any number of state felony charges" and that this was the type of criminal offense he was considering at the inception of the detention. *Id.* at 8.  In its argument at the hearing, the Government did not assert that the investigatory detention was supported by reasonable suspicion of any other criminal activity, specific or general, beyond what was stated by the detaining officer.

These two identified areas of suspected criminal activity—that "a group of men, including Defendant, had threatened or were intending to do harm to Mr. Ingram" and that "one or more of the men had brandished or pointed a firearm at Mr. Ingram"—were expressly discussed by the Court in considering the motion to suppress.[1]  Order at 8-11. To the extent that the Government would argue now that some other criminal activity was suspected and it is *that* suspicion which allowed the investigatory detention of Defendant, the Government does not explain what that activity was or why it was not raised in the original briefing or hearing.  Such an argument does not present a proper ground for reconsideration.  *See Christy*, 739 F.3d at 539 ("A motion to reconsider should not be used to . . . advance arguments that could have been raised earlier.").

The Government next argues that the Court erred in not deferring to the detaining officer's acceptance of Mr. Ingram's statement that a group of armed men "were after him"

---

[1] In the Order, the Court also discussed whether the investigatory detention could have been properly based on reasonable suspicion of a gun-possession crime. Order at 7-8. The Court did not reach this issue—and does not opine on it now—because, "[t]he Government did not argue or present evidence that [the detaining officer] was aware of facts supporting a reasonable suspicion that Defendant, or any of the group of men, was prohibited by the State of Oklahoma from carrying handguns inside or outside the Denny's." *Id.* at 8.  For completeness, the Court adds that the Government likewise did not assert that there was reasonable suspicion of a gun-possession crime under federal, tribal, or local law.

3

as credibly reporting that the men had threatened or were intending to harm Mr. Ingram. *See* Mot. at 8-11.[2] In the Order, the Court discusses at length the inconsistencies,[3] absence of detail,[4] and countervailing facts[5] that undermine the credibility of Mr. Ingram's statement. Order at 10-11. Accordingly, while acknowledging the deference given to law enforcement officers to evaluate the situation before them, and the presumptive credibility of "a firsthand report by an identifiable informant," the Court found that in this instance

---

[2] As a third ground for reconsideration, the Government argues that if it is accepted that the group of men intended to harm Mr. Ingram, the Court erred in determining that the totality of the circumstances did not support an adequate basis for the investigatory detention of Defendant. *See* Mot. at 11-14. Because the Court disagrees with the premise, no further discussion of this ground is needed.

[3] Mr. Ingram stated to the 911 operator that he "kn[e]w" the men in the group "got [guns] on them" and stated to the detaining officer that he "kn[e]w they had a firearm"; but, Mr. Ingram stated to the 911 operator that his reason for believing the men had guns was "because everyone do at the motel" and, when questioned by officers at the Denny's as to whether he had seen a gun, pointedly did not answer. *See* Order at 3-5. Mr. Ingram also stated to the 911 operator that the men "ran back in the motel across the street" or went to a "white Charger"; but, when questioned by the officers, Mr. Ingram suddenly identified Defendant, who was standing near the officers in the central area where customers wait to be seated, as "one of them." *See id.* at 4-5.

[4] In a lengthy conversation with the 911 operator and a shorter but non-urgent communication with the officers at the Denny's, Mr. Ingram did not provide any greater description of his belief that the group of men intended to do him harm than to say that they were "after me" and "out to get me." *See* Order at 3-5. Thus, despite having ample time and reason to do so, Mr. Ingram did not report any statement, gesture, or expression by any of the group of men indicating an intent to harm Mr. Ingram, or any circumstances reasonably viewed as indicating an intent to harm to Mr. Ingram. Additionally, although it is not clear when the detaining officer became aware of this statement, the 911 operator conveyed to the officers that Mr. Ingram had said that the men in the group "[we]re not threatening anyone." *See id.* at 3-4.

[5] Upon entering the Denny's, the detaining officer found the customers and employees to be calm and unconcerned. *See* Order at 4. Further, the detaining officer spoke briefly to Defendant before interviewing Mr. Ingram, and, despite being free to go, Defendant remained in the seating area of the Denny's rather than leaving.

4

the totality of the circumstances showed that Mr. Ingram's statement did not carry sufficient indicia of reliability to allow it to be accepted on its face. *Id*. at 8-11. It is these facts that distinguish the matter before the Court from those at issue in the additional authority submitted by the Government. This argument does not present a proper ground for reconsideration. *See Christy*, 739 F.3d at 539 ("A motion to reconsider should not be used to revisit issues already addressed. . . .").

Accordingly, the United States' Motion to Reconsider (Doc. No. 64) is DENIED.

IT IS SO ORDERED this 23rd day of January, 2023.

_____
CHARLES B. GOODWIN
United States District Judge